## REAVIS et al. v. UNITED STATES.

### No. 1861.

Circuit Court of Appeals, Tenth Circuit.

Oct. 24, 1939.

James H. Mathers and James C. Mathers, both of Oklahoma City, Okl., and A. O. Manning, of Fairview, Okl., for appellants.

Charles E. Dierker, U. S. Atty., and Wade H. Loofbourrow, Asst. U. S. Atty., both of Oklahoma City, Okl., for appellee.

Before LEWIS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Parker Mitchner Reavis, Johnnie William Smith, and Marvin Arthur Carroll were indicted in two counts. The first charged that they formed a conspiracy to have in their possession and under their control counterfeit coins of the denomination of 50 cents, and to attempt to pass, utter and sell such coins as true and genuine; and the second charge that they had in their possession eighteen falsely made, forged and counterfeited coins in resemblance and similitude of genuine coins of 50 cent denominations. All defendants were found guilty. Reavis was sentenced on the second count to ten years in the penitentiary and to pay a fine of $500, and he was placed on probation on the first count for the period of five years to begin at the expiration of the sentence on the second count or upon his release from custody under such sentence. Carroll was sentenced on the first count to a term of two years in the penitentiary, and he was placed on probation on the second count for a term of five years to begin at the conclusion of the sentence on the first count or upon his release from custody on such count. The record does not show what disposition was made of Smith. Reavis and Carroll appealed.

It is contended that the evidence was insufficient to establish the conspiracy laid in the first count of the indictment, or to connect either of the appellants with such a conspiracy. There was evidence which tended to establish these facts. Carroll went into a sandwich shop in Kingfisher, Oklahoma, about 3:30 o'clock in the afternoon of October 12, 1938, ordered a 5-cent package of tobacco, and tendered a 50-cent coin in payment. The clerk examined the coin, stated that he thought it was counter-

feit, and refused to accept it. Carroll thereupon said, "If it is bad, I don't want you to take it," and handed him a genuine coin. The second coin was accepted, the tobacco and 45 cents in change were delivered to Carroll, and he immediately departed. A deputy sheriff was advised of the transaction and soon thereafter arrested Carroll at the west edge of the town on Highway 33. Carroll had only 45 cents in change in his pockets. He stated that he had thrown the counterfeit coin away; that he did not know it was counterfeit; that he ate breakfast that morning in El Reno; and that he must have received the coin in change. At about 3 o'clock on the same afternoon Reavis went into a grocery in Kingfisher, ordered a 5-cent package of tobacco, and tendered a 50-cent coin in payment. The clerk examined it, said it was counterfeit, and refused to accept it. Reavis thereupon handed him another 50-cent coin and asked, "Do you think this one is any good?" The clerk replied in the affirmative and gave Reavis 45 cents in change. When Reavis left the store he contacted Smith, and later they got into an automobile and drove away. Reavis purchased a pair of socks at the J. C. Penny store between 3 and 4 o'clock; the price was 15 cents; he paid for them with a 50-cent coin; and a counterfeit 50-cent coin was found in the cash register at the close of business that day. He purchased a 5-cent spool of thread at the R. E. Young Company store during the afternoon; he also purchased a 25-cent purse from a different clerk, and paid for it with a 50-cent coin; and the cash register contained two counterfeit 50-cent coins at the close of business that day. Soon after Reavis purchased the tobacco, the chief of police began a search for him and Smith. He drove to the west part of town and there saw Carroll in the custody of the deputy sheriff. Reavis and Smith came along in an automobile belonging to Reavis, going east on Highway 33. The chief of police started in pursuit of them, sounding his siren and motioning them to stop. After a chase of approximately half a mile, he forced them off the highway and took them into custody. In the course of the chase they crossed a bridge over a creek, and while on the bridge the one on the right side of the car threw something over the bannister. It looked like torn pieces of paper but it did not float down to the creek as paper would. Instead, it fell like a heavy object would fall. Just before their arrest, Smith bent over, picked up

something and threw it out of the car. Reavis had eight genuine 50-cent coins on his person, and $7.60 in change in 25-cent coins and less. A spool of thread, three cheap handkerchiefs, a pair of socks, six plugs of tobacco, and three sacks of smoking tobacco were in the car. The socks were identical with those purchased at the Penny store and the thread was identical with that purchased at the Young store. One counterfeit 50-cent coin was found near the place at which the arrest occurred; five were found just north of the point at which the stream runs under the bridge; and twelve were found in the creek bed and in the sand and brush. The coin found near the place at which the arrest took place, the twelve found under the bridge, the two passed at the Young store, and the one passed at the Penny store all bore distinct and identical peculiarities or characteristics. Reavis and Smith stated to a secret service agent of the United States in the presence of Carroll that the three of them had come from Watonga, Oklahoma, in a car, and Carroll made no denial or contradiction of the statement. On the day following the arrest of the three, the secret service agent searched the farm premises of Reavis located near Watonga, about thirty-three miles from Kingfisher. He found some mutilated plaster of paris moulds in the yard. They consisted of fruit jar lids. One of them bore the imprint of a circle into which a half dollar fitted perfectly, and it bore evidence of metal in it. He also found a paper sack containing three or four pounds of plaster of paris and some sandpaper. The sandpaper was the kind used by counterfeiters, and it had particles of metal on it.

The crime of conspiracy is in essence two or more persons combining and confederating with the intent and purpose of committing a public offense by the doing of an unlawful act or the doing of a lawful act in an unlawful manner. It is not essential that the agreement be in any specified form or that any particular words be used. It is enough if the minds of the parties meet and join in an understanding way to accomplish a common purpose. A conspiracy is rarely susceptible of direct proof as conspirators seldom reduce their agreements to writing or make public their unlawful plans. But direct proof is not necessary. The offense may be proved by circumstantial evidence. It may be deduced from statements, acts and conduct of the parties. Telman v. United States, 10 Cir.,

67 F.2d 716; Martin v. United States, 10 Cir., 100 F.2d 490.

Here the three defendants were in the same town on the same afternoon. At about the same hour Reavis and Carroll each purchased a 5-cent package of tobacco and sought to pay for it with a counterfeit coin of the same denomination. Each said substantially the same thing when the coin was rejected. Each produced a genuine 50-cent coin, paid for the tobacco and left. Reavis purchased merchandise elsewhere in the town and counterfeit coins were discovered in the cash registers at the close of business that afternoon. Merchandise found in his car immediately after the arrest was identical with that purchased. Reavis and Smith left town together while Carroll departed alone. But they all went in the same direction and all reached the west part of town. Carroll had thrown away the counterfeit coin before his arrest. Reavis and Smith threw theirs away while the officer was attempting to apprehend them. Reavis and Smith stated that all three of them came to town together in an automobile. The statement was made in the presence of Carroll and he did not deny or challenge it. And the things found at the home of Reavis indicated convincingly that counterfeit coins had been made there. These facts and circumstances and the reasonable deductions to be drawn from them were abundantly sufficient to warrant the jury in finding that the three conspired and confederated together as charged in the first count of the indictment. Furthermore, only the evidence submitted by the government is in the record. The defendants presented evidence but none of it is before us. It is stated in the brief of appellants that Reavis and Smith testified in their own behalf but none of the testimony is in the record. It may be that their testimony or that of other witnesses for the defendants contained outcroppings which tended strongly to strengthen the evidence of the government. The contention that the verdict of guilt on the first count is not supported by adequate evidence is without merit and cannot be sustained.

It is urged that the testimony of the secret service agent that Reavis and Smith stated to him in the presence of Carroll that the three of them came to town together and that Carroll did not deny the statement was inadmissible and prejudicial to Carroll. The argument is that a person under arrest on a criminal charge is not called upon to deny or contradict statements of others made in his presence tending to connect him with the offense, and that such statements though not denied or contradicted by him are not admissible against him. The contention is met with two obstacles. First, no objection was interposed to the testimony at the time of its admission. The statement is made in the brief of appellants that the testimony was admitted over objection but the record fails to support the statement. The record is barren of any objection whatever. Ordinarily a defendant in a criminal case cannot remain silent when evidence is offered against him and thereafter be heard to complain in respect of its admissibility. Such a quiescent attitude constitutes a waiver of the question. Furthermore, the testimony was clearly admissible as against Reavis and Smith, and it was the duty of Carroll to request that it be limited to them if he so desired. No such request having been made in any form, he cannot be heard to complain on appeal that the testimony was inadmissible and prejudicial as to him. Troutman v. United States, 10 Cir., 100 F.2d 628.

Finally, it is argued that the judgments and sentences are cruel, unusual, and excessive. But the fixing of penalties for criminal offenses is a legislative function, and a sentence within the limits of the statute which has been violated will not ordinarily be disturbed on appeal for being excessive, cruel, or inhuman. Martin v. United States, supra.

The judgments are severally affirmed.