## GARRISON v. UNITED STATES.
### No. 10506.

Circuit Court of Appeals, Fifth Circuit.
May 28, 1943.

Rehearing Denied June 25, 1943.

John D. McQueen, of Tuscaloosa, Ala., Frank F. Mize and Jos. S. Mize, both of Forest, Miss., and D. B. Holmes, Jr., of Meridian, Miss., for appellant.

Jim C. Smith, U. S. Atty., of Birmingham, Ala., for appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellant and Earliest Walker were convicted under the first count of an indictment charging that said defendants conspired together, and with other persons to the Grand Jurors unknown, to injure, oppress, threaten, and intimidate one J. G. Dorough in the free exercise and enjoyment of the right and privilege secured to him by the Constitution and Laws of the United States, to-wit, the right and privilege to inform public officials and officers of the United States of a violation of the Laws of the United States, and in furtherance of said conspiracy the said defendants, on the 9th day of May, 1942, did threaten, curse, and ill-treat the said Dorough because the latter had exercised the right and privilege of informing officers of the United States of the location of certain apparatus for the manufacture of intoxicating liquor, which apparatus or distillery had not been registered. Count two of the indictment charges the same conspiracy· and alleges as the overt act that the said defendants on the 11th day of May, 1942, assaulted the said Dorough by shooting at him ˙with a gun, cursing, threatening, and otherwise ill-treating the said Dorough out of the same animus alleged in the first count.

The defendants were each convicted on the first count of·the indictment.

There is abundant evidence to show that Willie Gray Garrison was engaged in the illicit liquor business and that Dorough had given information thereon to Federal officers. There is ample evidence to show that Garrison did curse, abuse, and threaten to kill the said J. G. Dorough on the night of May 9. On this occasion Garrison and Walker, riding in Garrison's truck, stopped at the home of one Tom Brunson, where Garrison accosted Dorough. Getting out of his truck, Garrison, carrying a flashlight and pistol, went to Dorough's truck, and accused the latter of giving information to the Federal officers. With the light in Dorough's face and the pistol under his chin, Garrison threatened to kill Dorough and to burn him out. There is evidence that Walker, who remained in the truck, had a rifle in his lap. There is evidence that late the same night Garrison and Walker returned to the home of Tom Brunson, where Brunson's wife undertook to intercede in behalf of her son Earl (Son) Brunson, whom Garrison had on the same day threatened and ordered to leave the community and the employ of Dorough. On this second visit Earliest Walker took part in the conversation and asserted that "no one done it but Son", and that Son had furnished the information to Mr. Dorough in reference to the liquor transactions. Apparently he was neither indifferent to, nor ignorant of, the situation. When the conversation ended Walker left the truck, taking with him a pistol. The record is silent as to whether the pistol so taken was the same pistol used by Garrison earlier in the night in threatening and intimidating Dorough.

Dorough testified that he had seen Earliest Walker and his brother, P. G. Walker, in company with Garrison on several occasions when they were either riding together in a truck or when they were in the woods together, and that he had given the Government officers infor-

878

mation as to the associations of Walker and Garrison.

Dorough testified that on the succeeding night of May 10 some unknown person shot at him five or six times with a pistol. He was unable to identify the would-be assassin.

The testimony is convincing as to the part played by Garrison, but the main inquiry is whether or not there is evidence to show that Garrison and Earliest Walker were knowingly acting in a common purpose. As usual, there is no direct evidence of any understanding or agreement. It is urged upon us that the circumstances are insufficient to justify the conclusion of the jury that there was any concert of action or understanding between Garrison and Walker. The circumstances convinced the jury that there was concert of action and community of purpose. The jury evidently believed the testimony for the Government as to: (a) the association between Garrison and Walker; (b) the riding together on other occasions as well as on the night in question; (c) the rifle in Walker's lap when Garrison had his pistol under Dorough's chin; (d) the pistol carried by Walker when he left Garrison that night; (e) the knowledge of Walker as to Son Brunson's part in giving out information. From these facts and circumstances the jury could have concluded that Walker was not only an informed participant, but that he was the gun bearer for Garrison, and that Garrison and Walker were not out to shoot rabbits.

Wide latitude is allowed in the presentation of evidence as to the facts and circumstances in a conspiracy case. The specifications of error based upon the overruling of defendant's several objections to testimony are without substance.

There was evidence in the record, which the jury evidently believed, upon which it could find that there was an understanding and concert of action between Garrison and Walker, and there is ample evidence of the commission by Garrison of the overt act alleged in the first count. The act of one of the conspirators is the act of all. The judgment is

Affirmed.

SIBLEY, Circuit Judge (dissenting).

I do not read the evidence just as it is stated in the majority opinion. I think it shows a very high-handed course of conduct on the part of appellant, a white man whose illegal operations Dorough had reported, on several occasions when the negro Walker was not even present. It does not appear that the negro had any part in appellant's business, or any interest in what appellant was doing. On the one evening when he was present he was selling some peas to appellant, and on the way back the two were stopped by a negro woman for a talk. There was no possible preconcert to do anything to Dorough, who happened to be on the woman's premises at the time. Walker left the scene with his pistol, on his way to his brother's house, intending to move to Birmingham the next morning, as he did. I don't see any evidence of a conspiracy with Walker to do anything to Dorough, though appellant alone on several occasions manifested a menacing and malicious attitude towards Dorough.

On Petition for Rehearing.

WALLER, Circuit Judge.

The petitions for rehearing present no matters not considered by the Court in its original opinion, and said petitions should be, and the same are hereby, denied.