## MADSEN v. UNITED STATES.

No. 3490.

Circuit Court of Appeals, Tenth Circuit.

Dec. 17, 1947.

Rehearing Denied Jan. 5, 1948.

508

J. Paul Jorgensen, of Wichita, Kan. (H. C. Castor, of Wichita, Kan., on the brief), for appellant.

Lester Luther, Asst. U. S. Atty., of Topeka, Kan. (Randolph Carpenter, U. S. Atty., and James W. Wallace, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Elmer Siles Madsen, together with Jack Aaron Burger, Gerald Theodore Fowler, William Eugene Duvall, Clinton Otis Ransford, and Frank Nelson Madsen, were charged by count 1 of an indictment under 18 U.S.C.A. § 88[1] with a conspiracy to commit offenses against the United States in violation of the National Motor Vehicle Theft Act, [2] and in subsequent counts with the commission of substantive offenses. Count 1 of the indictment charged the conspiracy. It also

---

[1] Section 88, Title 18 U.S.C.A., reads as follows: "Conspiring to commit offense against United States. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner for any purpose, and one or more of such parties do any act to affect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

[2] Section 408 of Title 18 U.S.C.A., so far as material, provides: "Whoever shall receive, conceal, store, barter, sell, or dispose of any motor vehicle * * *, moving as, or which is a part of, or which constitutes interstate or foreign

charged the commission of thirty-three overt acts in effectuating the conspiracy. Counts 3, 5 and 8 of the substantive counts charge Madsen with receiving and concealing certain named motor vehicles moving in interstate commerce, knowing them to have been stolen. Counts 6, 9, 10 and 13 charge him with transporting certain named stolen vehicles from places in Kansas, to places in Oklahoma, and certain other named motor vehicles from places in Oklahoma, to places in Kansas, knowing them to have been stolen. He was found guilty by a jury on all counts. A motion in arrest of judgment was sustained as to counts 9 and 13, and judgment was entered on the remaining counts. This appeal followed.

Appellant's brief sets out fourteen assignments of error upon which he relies for reversal. These assignments may, however, be summarized generally as follows:

1. The indictment is insufficient because it does not charge appellant with a wrongful intent or with knowledge of any of the essential acts necessary to commit an offense against the United States.

2. Erroneous instructions by the court.

3. The evidence was insufficient to support the verdict of guilty.

### The Indictment [3]

The sufficiency of an indictment is no longer tested by the rigors of the old technical rules of criminal procedure. The test is whether the indictment contains the elements of the offense intended to be charged and sufficiently informs the defendant of what he must meet in the preparation of his defense, and whether it is sufficiently specific to obviate the danger of the defendant being prosecuted a second time for the same offense. The indictment must allege the essential elements of the offense but mere forms of averment may be disregarded.[4] Tested by these rules, we find no difficulty in upholding the sufficiency of the indictment.

The indictment charged the defendants with having conspired, confederated and combined with others unknown to commit certain offenses against the United States in violation of certain statutes of the United States, naming them. Then, as set out in the foot note, it designates specifically the method by which the conspiracy was to be consummated, followed by a list of the overt acts charged to have been committed in effectuating the conspiracy. There could be no doubt or uncertainty in the minds of any of the defendants as to the nature of the crime charged to them. It is true, as urged, that the indictment does not contain the words "knowingly, wilfully, feloniously, intentionally or unlawfully" but neither do the applicable statutes contain such words. It is unnecessary for an indictment to contain such formal words where the allegations thereof necessarily or fairly import guilty

---

commerce, knowing the same to have been stolen, shall be punished by a fine of not more than $5,000, or by imprisonment of not more than five years, or both. * * * "

[3] The material parts of the indictment are as follows: "On or about January 1, 1946, and continuously thereafter between January 1, 1946 and May 15, 1946, * * * Madsen * * * Burger * * * Fowler * * * Duvall * * * Ransford * * * conspired, confederated, combined and with other persons to the grand jurors unknown to commit certain offenses against the United States in violation of certain statutes of the United States, and more particularly the National Motor Vehicle Theft Act, (18 U.S.C.A. § 408), that is to say: To transport and cause to be transported in interstate commerce * * * certain

motor vehicles which had theretofore been stolen from the owners thereof, and to receive, conceal, store, barter, sell and dispose of said motor vehicles, the same moving in and which were a part of interstate commerce, knowing the same to have been stolen:"

Then followed the list of the overt acts charged to have been committed in furtherance of the conspiracy.

[4] Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509; Casebeer v. United States, 10 Cir., 87 F.2d 668; Hewitt v. United States, 8 Cir., 110 F. 2d 1; Sutton v. United States, 5 Cir., 157 F.2d 661; Pickens v. United States, 5 Cir., 123 F.2d 333; Barkdoll v. United States, 9 Cir., 147 F.2d 617; Center v. United States, 4 Cir., 96 F.2d 127; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861.

knowledge.[5] An indictment charging a conspiracy is sufficient if it follows the language of the statute and contains a sufficient statement of an overt act to effectuate the object of the conspiracy.[6]

It is also urged that the court erred in refusing to dismiss counts 3, 5, 6, 8 and 10 for the reason that such counts each charged two separate offenses and were, therefore, duplicitous. Count 6 charged defendants with having "transported and caused to be transported in interstate commerce a stolen motor vehicle." Transporting and causing to be transported constitute a single offense and a count which charges one with "transporting and causing to be transported" does not charge two separate offenses and is, therefore, not duplicitous. Count 10 charged the defendants with "having transported a stolen motor vehicle. * * *" There is no basis whatever for the assertion that this count charged more than one offense. Counts 3, 5 and 8 each charged appellant with having "received and concealed a stolen motor vehicle * * *." We have, in a number of cases, held that receiving and concealing a stolen motor vehicle having been transported in interstate commerce constituted a single and separate offense from that of transporting such motor vehicle in interstate commerce.[7] The National Motor Vehicle Theft Act sets out two offenses—one of transporting or causing to be transported, and a second of receiving, concealing, storing, bartering, selling or disposing of such motor vehicle. The various elements constituting the second offense are set out in the disjunctive. They do not, however, each constitute a separate offense but separate acts by which a single offense may be committed. The crime of receiving or concealing a stolen motor vehicle, transported in violation of the Act, was properly charged in the conjunctive by the use of the conjunction "and." In fact, this is the only way in which the offense could have been charged without being subject to an attack for vagueness or indefiniteness.[8]

Instructions.

Complaint is made of the instructions of the court to the jury. It may be noted that no exceptions were taken to the instructions of the court at the time they were given to the Jury or prior to the time the jury retired to consider its verdict. Rule 30 of the New Rules of Criminal Procedure, 18 U.S.C.A. following section 687, provides that "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." This rule does not, however, deprive a court of its inherent power on its own volition to inquire into the adequacy of a charge to a jury in a criminal case where the life or liberty of a defendant is involved.[9]

It is sufficient to say that we have examined the instructions of the court notwithstanding that no objections were made thereto as required by the above Rule, and that we find no substantial error therein. The instructions adequately and fairly presented the issues to the jury. In view of the condition of the record, and in the in-

5 Chew v. United States, 8 Cir., 9 F. 2d 348, 352; Frohwerk v. United States, 249 U.S. 204, 209, 39 S.Ct. 249, 63 L.Ed. 561.

6 Williams v. United States, 6 Cir., 3 F. 2d 933, 934; Rudner v. United States, 6 Cir., 281 F. 516, 518; Center v. United States, 4 Cir., 96 F.2d 127, 129; Rumely v. United States, 2 Cir., 293 F. 532; Jelke v. United States, 7 Cir., 255 F. 264.

7 Chrysler v. Zerbst, 10 Cir., 81 F.2d 975; Record v. Hudspeth, 10 Cir., 126 F.2d 215; Lindsay v. United States, 10 Cir., 134 F.2d 960.

8 O'Neill v. United States, 8 Cir., 19 F. 2d 322; Poffenbarger v. United States, 8 Cir., 20 F.2d 42; Ackley v. United States, 8 Cir., 200 F. 217; Troutman v. United States, 10 Cir., 100 F.2d 628; Price v. United States, 5 Cir., 150 F.2d 283; Mellor v. United States, 8 Cir., 160 F.2d 757; 42 C.J.S., Indictments and Informations, § 166.

9 Miller v. United States, 10 Cir., 120 F.2d 968; Forakis v. United States, 10 Cir., 137 F.2d 581; Rose v. United States, 10 Cir., 128 F.2d 622.

terest of brevity, we deem it needless to further elaborate on this assignment of error.

 Finally, it is urged that there was insufficient evidence to support a verdict of guilty. There is a conflict in the evidence. Appellant testified to a statement of facts, which, if believed by the jury, would absolve him from liability, but unfortunately for him the jury rejected his version of these transactions. We may not reverse even though, as the triers of fact, we might have believed the testimony which the jury rejected. Since our function is limited to an inquiry to ascertain whether the verdict finds support in the evidence, only such evidence will be analyzed as in our opinion supports the verdict. As pointed out, count 1 of the indictment charged a conspiracy. The gist of such an offense is an unlawful agreement or understanding between the parties to violate the law, supplemented by an overt act in consummation thereof.[10] It is rarely that a conspiracy is susceptible of direct proof. Men do not ordinarily reduce such unlawful agreements to writing or make them a matter of record. Ordinarily criminal conspiracies must of necessity be established largely by indirect and circumstantial evidence, and by inferences largely deductible from the acts and conduct of the conspirators.[11]

 There was evidence to the following effect. Appellant, Madsen, was, in 1946 and years prior thereto, engaged in the auto salvage business in Anthony, Kansis, under the trade name of Madsen's Auto Salvage Business. Defendant, Fowler, purchased a 1934 Chevrolet from Madsen in September, 1945. Subsequently, Fowler purchased a 1935 Plymouth from Madsen. Early in January, 1946, he and Madsen were sitting on a truck bed in Madsen's

yard, and Fowler asked Madsen if he would buy a later model car. Madsen asked what model, and Fowler replied, "Around a '40 or '41," to which Madsen replied, "Yes, I will buy it." Fowler stole a 1937 Chevrolet at Arkansas City, and sold it to Madsen, giving him a bill of sale for it but not delivering a certificate of title as required by the Kansas Laws. Madsen and Fowler had another conversation later in which Madsen asked Fowler if he was going to bring him titles to cars or if they would be without titles, and Fowler told him he would try to get titles. He did not get any titles for some time but later began getting titles from one O'Brien at Great Bend, and Fowler did then attempt to steal a car that as to make and model would fit the title. If the title certificate he got was for a 1936 Chevrolet, he would try to get a 1936 Chevrolet. Later Fowler asked Madsen if he would take the cars without titles, and Madsen said yes that he would try to match them in some way. Fowler had defendants Duvall and Burger assist him in stealing cars. They would drive the stolen cars to Anthony, and leave them at the City Lake or elsewhere about town and Fowler would get them and deliver them to Madsen. From the first of January, 1946, until sometime in April, 1946, Fowler delivered eighteen or twenty stolen automobiles to Madsen, and with part of them he delivered certificates of title, but none of the certificates fit the car with which they were delivered. Some of these cars were stolen in Oklahoma, and driven into Kansas, and others were stolen in Kansas, reprocessed at Madsen's, and sold in Oklahoma. Madsen ordinarily paid Fowler from Fifty to One Hundred Dollars for these cars. When Madsen received these cars, he had them repainted, changed the motor numbers to correspond with the ones on the certificate of title already in his possession,

[10] Craig v. United States, 9 Cir., 81 F. 2d 816; Reavis v. United States, 10 Cir., 106 F.2d 982; Egan v. United States, 8 Cir., 137 F.2d 369; Martin v. United States, 10 Cir., 100 F.2d 490; Marx v. United States, 8 Cir., 86 F.2d 245; Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975; Phelps v. United States, 8 Cir., 160 F.2d 858; 15 C.J.S., Conspiracy, § 48.

[11] Reavis v. United States, 10 Cir., 106 F.2d 982; Egan v. United States, 8 Cir., 137 F.2d 369; Garrison v. United States, 5 Cir., 135 F.2d 877; Devoe v. United States, 8 Cir., 103 F.2d 584; Simons v. United States, 9 Cir., 119 F.2d 539; Phelps v. United States, 8 Cir., 160 F. 2d 858; Braatelien v. United States, 8 Cir., 147 F.2d 888; 15 C.J.S., Conspiracy, § 93.

and then sold the motor car, together with the certificate of title. Fowler stole and delivered to Madsen a 1937 Buick automobile. Madsen had this car repainted, changing the color. He and Fowler went to the Cut-Rate Auto Salvage Company at Pratt, Kansas, operated by a Mr. Withers, where Madsen purchased the body and chassis of a completely wrecked 1937 Buick for $35. They took the serial and body number plate off the car and took this plate with them. This plate was placed onto the stolen Buick car which Fowler had delivered to Madsen, and was used in obtaining a certificate of title to this car by Madsen. Madsen did not take the body or the frame with him. Mr. Withers called Madsen about a week later and asked him when he was going to come after the body, and Madsen replied, "In a week or so." When he did not show up, Withers called him again to come and get it, and Madsen replied he would as soon as he could. He never did come after the body or the frame, and Withers finally hauled it away and dumped it on the city dump as junk.

William Kane testified that Madsen asked him to procure two automobile licenses and titles in Arkansas for Madsen, and Madsen gave him the motor numbers, the make, and the capacity of the car, and that he did procure such titles and licenses for Madsen and that Madsen paid for the titles and licenses and Madsen placed them on two of his cars.

One witness testified that Fowler brought a car to him to be painted and that Madsen paid for the painting of the car.

Fowler testified positively to his part in these transactions. Madsen took the stand and gave his version of the transactions, which, if believed, would have justified the jury in believing that he acted without any unlawful intent in what he did in regard to changing these numbers and certificates of title, having cars repainted, and these other various transactions. But unfortunately for him, the jury refused to accept his versions of these transactions and drew the natural deduction and inference of guilt and unlawful intent, which it was warranted in doing. That the jury gave consideration to both the testimony of Fowler and the explanation offered by Madsen, is evidenced by the following transaction. The jury retired to consider its verdict at 10:05 A.M., on January 28. After considering the case for one hour and fifteen minutes, they returned at 11:20 o'clock A.M., and requested that the testimony of Gerald Fowler and Elmer Madsen be read. This was done, and the jury again retired. At 12:25 o'clock, the jury returned with its verdict of guilty. This clearly shows the jury gave consideration to both versions of the transactions and resolved the conflict in the testimony against Madsen. The inference of intent to violate the law, as charged in count 1, is clearly supported by the testimony. As a matter of fact it is difficult to see how any other inference could have been logically reached.

We have given consideration to all the questions raised by this appeal but find no substantial error in the record.

The judgment appealed from is, therefore, affirmed.