**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas PARISI, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Joseph O'BRIEN, Defendant-Appellant.**

**Nos. 16809, 16810.**

United States Court of Appeals Sixth Circuit.

Aug. 30, 1966.

Arthur Karger, New York City, for appellant O'Brien, Philip A. Gillis, Detroit, Mich., on the brief.

Ivan E. Barris, Detroit, Mich., for appellant Parisi.

Paul J. Komives, Asst. U. S. Atty., Detroit, Mich., for appellee, Lawrence Gubow, U. S. Atty., Detroit, Mich., on the brief.

Before PHILLIPS and CELE-BREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

These cases are on appeal by Thomas Parisi and Charles Joseph O'Brien, defendants-appellants, from a judgment of conviction in the United States District Court for the Eastern District of Michigan, Southern Division. These appellants, whom we will call defendants,

along with one Sam Salvatore Finazzo, were jointly indicted on a three-count indictment charging them with unlawfully removing certain merchandise from a bonded area at the Detroit Harbor Terminal and from the custody and control of the United States Customs Service, in violation of Section 549, Title 18, U.S.C.[1]

The first count charged that they removed fourteen cases containing marble slabs and table tops, with identifying markings, on or about March 19, 1963. The second count charged the removal of a marble statue of St. Theresa on or about March 18, 1963. The third count charged that they removed twenty-one cases containing brass valves and fittings and chrome valve handles on or about March 18, 1963. Each count,[2] except as to the date and description of merchandise removed, is identical in terms of the offense charged.

The trial judge sustained a motion for a judgment of acquittal, on behalf of Finazzo, at the close of the government's testimony. The defendant Parisi was found guilty on the second and third counts and the defendant O'Brien was found guilty on all three counts of the indictment. Parisi was sentenced to imprisonment for eighteen months and O'Brien for one year and one day.

The merchandise involved in the indictment had been a part of the cargo of the SS Montrose which sank in the Detroit river on July 30, 1962. Some of this merchandise was salvaged in September 1962, while the ship was still submerged. The remainder of the cargo was removed from the ship in November 1962, after it was refloated. All of this salvaged cargo was taken to the Detroit Harbor Terminal. The merchandise was placed under a General Order by the Collector of Customs upon its discharge from the ship. (Physical possession taken by Collector of Customs who holds it until final disposition is made.)

The insurance company advertised the merchandise for sale and a Mr. Mularoni, who was the highest bidder, purchased some of the items which are the subject of the three counts of the indictment. A few days later Mr. Mularoni received a telephone call from Arrow Salvage Company. As a result of this call he went to the office of Arrow Salvage Company and, upon being shown some merchandise, identified it as the merchandise he had bought the week before. Mr. Mularoni notified the customs officers and the next day he went back to Arrow Salvage Company in company with customs officers. They met the defendant Thomas Parisi who showed them the merchandise and who claimed that it was his. Part of it was identified as merchandise previously purchased by Mularoni. Other items were identified as part of the cargo of the Montrose and which had been in storage at Detroit Harbor Terminal. Later, the defendants O'Brien and Salvatore Finazzo came in. After some questioning all three men were arrested and were subsequently charged in the indictment now before the Court.

Among the various assignments of error both defendants claim that the indictment does not state an offense. Since each count of the indictment is

1. "Whoever, maliciously enters any bonded warehouse or any vessel or vehicle laden with or containing bonded merchandise with intent unlawfully to remove therefrom any merchandise or baggage therein, *or unlawfully removes any merchandise or baggage in such vessel, vehicle, or bonded warehouse or otherwise in customs custody or control;*"  \* \* \* (Emphasis added.)

2. "Count Two: The Grand Jury further charges: That on or about March 18, 1963, in the Eastern District of Michigan, Southern Division, Sam Salvatore Finazzo, Thomas Parisi and Charles Joseph O'Brien, defendants herein, did unlawfully remove certain merchandise from a bonded area at the Detroit Harbor Terminal, 4461 West Jefferson, Detroit, Michigan, and from the custody and control of the United State Customs Service, namely a marble statue of St. Theresa, which had been in Customs custody since being removed from the SS Montrose on or about July 29, 1962; in violation of Section 549 Title 18, USC."

subject to the same objection made by defendants, we will refer to them as the indictment. The charge that the indictment is fatally defective and does not state an offense is based on two grounds. 1. It does not allege that the defendants acted knowingly or wilfully or with felonious intent; and 2. It does not set out with requisite specificity the offense, under the general statutory description, with which the defendants are charged.

■ In support of the first claim of deficiency, the defendants cite Hughes v. United States, 338 F.2d 651, 340 F.2d 609, C.A.1. This case is analogous to the case at bar but the district judge did not follow it and neither do we. In United States v. Deutch, 98 U.S.App. D.C. 356, 235 F.2d 853, 854, the court held an indictment sufficient which charged that the defendant "'unlawfully refused to answer' five specific questions put to him by a Committee of Congress." This was a prosecution under Section 192, Title 2, U.S.C. This statute contained two offenses:

"* * * willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, * * *"

The court said:

"Any doubt on this is resolved by the presence of the word 'unlawfully' preceding 'refused' in this indictment; that would satisfy the statute since a refusal would be unlawful only if it were willful. In other words, if 'refused' standing alone were held not sufficient because it does not connote a refusal which violates the statute, the presence of the word 'unlawfully' would remedy that defect."

So in the case before us, "unlawfully remove" has the same effect as "unlawfully refused to answer." To the same effect is Logsdon v. United States, 253 F.2d 12, 13–14, C.A.6; Madsen v. United States, 165 F.2d 507, C.A.10; United States v. Williams, 202 F.2d 712, 713, rehearing den. 203 F.2d 572, C.A.5, cert. den. 346 U.S. 822, 74 S.Ct. 37, 98

L.Ed. 347; United States v. Amorosa, 167 F.2d 596, 597, C.A.3; United States v. Silver, 235 F.2d 375, C.A.2, cert. den. 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 88.

In Madsen v. United States, supra, the court said, 165 F.2d at p. 509:

"The sufficiency of an indictment is no longer tested by the rigors of the old technical rules of criminal procedure. The test is whether the indictment contains the elements of the offense intended to be charged and sufficiently informs the defendant of what he must meet in the preparation of his defense, and whether it is sufficiently specific to obviate the danger of the defendant being prosecuted a second time for the same offense. The indictment must allege the essential elements of the offense but mere forms of averment may be disregarded. Tested by these rules, we find no difficulty in upholding the sufficiency of the indictment."

In Hartwell v. United States, 107 F.2d 359, at p. 362, C.A.5, the court said:

"While it is certainly true that a valid indictment cannot be dispensed with as a predicate to conviction where an indictment is necessary, (Citation omitted) it is also true that the practice of fine combing indictments for verbal and technical omissions is no longer countenanced in the courts, and that a substantial compliance with the purpose of an indictment to acquaint the defendant with the offense of which he stands charged, so that he can prepare his defense and protect himself against double jeopardy, is sufficient. The indictment complained of complies fully with the rule."

In Duke v. United States, 233 F.2d 897, at p. 899, C.A.5, the court said:

"The sufficiency of an indictment must be determined on the basis of practical rather than technical considerations, * * *"

See also Risken v. United States, 197 F.2d 959, 962, C.A.8; 4 Anderson's Wharton's Criminal Law and Procedure, Section 1749, p. 538; United States v.

Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92.

■ The claim that the indictment does not describe the offense with specificity is without merit. Each count of the indictment describes exactly what merchandise was removed, the date that it was alleged to have been removed and that it was in violation of Section 549, Title 18, U.S.C. This section defines the offense without reference to any other statute. The defendants would have no difficulty in knowing with what crime they were charged. Neither would there be any danger of the defendants being prosecuted a second time for the same offense.

The district judge gave a scholarly opinion on the subject of the sufficiency of the indictment and we are in agreement with it. 255 F.Supp. 755. We conclude that the indictment is valid and that it is "a plain, concise and definite written statement of the essential facts constituting the offense charged," as required by Rule 7(c) of the F.R.Cr.P.

One assignment of error on behalf of the defendant O'Brien is that the evidence is insufficient to sustain a conviction. The rule for an appellate court in determining the sufficiency of the evidence is stated in Ross v. United States, 197 F.2d 660, 665, C.A.6, as quoted with approval from United States v. Manton, 107 F.2d 834, 839, C.A.2, cert. den. 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012:

> "In passing upon the sufficiency of the proof, it is not our province to weigh the evidence or to determine the credibility of witnesses. We must take that view of the evidence most favorable to the government and sustain the verdict of the jury if there be substantial evidence to support it."

■■ We have read all of the evidence submitted to us in the appendices and considering it in the most favorable light to the government, it is such that, if believed, the jury could draw reasonable inferences to support a guilty finding against the defendant O'Brien. One

cannot read the evidence without concluding that O'Brien was the one who was instrumental in having the merchandise removed. The question then was one of intent and that was a matter for the jury to determine under all of the facts and circumstances of the case. We agree with the trial judge that there was sufficient evidence to support the conviction of O'Brien.

One of the assignments of error urged on behalf of the defendant Parisi is that the trial court erred in not granting his motion for acquittal. The record shows that no motion for acquittal was made for defendant Parisi after verdict in accordance with Rule 29(c) F.R.Cr.P. Such motions were made during the progress of the trial. These motions raise a question as to the sufficiency of the evidence. We are of the opinion that there was ample evidence to support the conviction of the defendant Parisi.

■ Both defendants assign as error that the trial judge erred in instructing the jury as a matter of law that Area B was within the limits of a bonded warehouse. In our opinion what constituted a bonded warehouse was a question of law and it was the duty of the trial judge, in the absence of conflicting testimony on the subject, to instruct the jury as a matter of law that Area B met the requirements for a Class 4 Bonded Warehouse. This required the trial judge to interpret several statutes and regulations. We agree with the interpretation and analysis of the statutes and regulations as made by the trial judge in his opinion denying the motions for a new trial, as reported at 255 F.Supp. 755, and conclude that there was no error in this respect.

■ Another claim made on behalf of defendant O'Brien is that the trial judge erred in charging the jury in such a manner that the jury could find that the defendant O'Brien had possession of the property involved, and that it could draw inferences against him of guilty knowledge and participation in the unlawful removal of the property. In support of

this claim, a paragraph of the instruction, taken out of context, is quoted in the brief. Reading the entire instruction on this subject we conclude that the jury could not possibly find that the instruction with reference to inferences to be drawn from recently removed property could apply to the defendant O'Brien. We find no error in this respect.

■ Both defendants claim that the court erred in not charging the jury that in order to convict it was necessary for the jury to find that the defendants knew that the merchandise was in a bonded warehouse. This request was refused by the court for the reason that the statute does not make knowledge that the area, from which the merchandise was taken, was bonded an element of the offense.

No cases are cited to the effect that knowledge that the warehouse was a bonded warehouse is an essential element of the crime. Hargrove v. United States, 67 F.2d 820, 90 A.L.R. 1276, C.A.5, cited by counsel, in our opinion is not applicable. The question here is whether the trial court erred in not charging the jury that "a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence." The court said, at p. 823:

> "The court here fell into the error of not distinguishing between the elements of an offense, where the statute simply denounces the doing of an act as criminal, and where it denounces as criminal only its willful doing. In the first class of cases, especially in those offenses mala prohibita, the law imputes the intent. (Citations omitted.) Had the prosecution here been under such a statute, the charge of the court would have been unexceptionable. In the second class of cases, a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence."

To the same effect is Babb v. United States, 252 F.2d 702, 708, C.A.5, cert. den. 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed. 1147, also cited by counsel for defendant. In our opinion the case before us is in the first class of cases described in Hargrove, supra. In Hughes v. United States, supra, the court held that a felonious intent was a necessary element of the crime but it did not hold that a felonious intent to remove property from a bonded warehouse had to be coupled with a *knowledge* that the warehouse was bonded. We find no error on the part of the trial judge in rejecting the proffered charge.

■ Both defendants assign as error the failure of the trial judge to grant a new trial, for the reason that one of the jurors, Francis L. Tickner, failed to disclose that he had been an employee of government witness William P. Young, the president of the Detroit Harbor Terminal. There is attached, as an exhibit, to the motion of the defendant O'Brien for a new trial an affidavit of the witness William P. Young.

According to this affidavit, Young is the sole owner of a Michigan corporation known as Better Brands Distributing Company. Approximately fifteen years prior to January 1965, this corporation was operated at 4461 West Jefferson Street in Detroit, Michigan, the premises of Detroit Harbor Terminal. Juror Francis L. Tickner had been employed by Better Brands Distributing Company about fifteen years prior to the time of the trial. He was so employed for a little more than a year and worked under the supervision of Mr. Young. It was further stated in the affidavit that on one afternoon during the progress of the trial, the juror recognized Mr. Young and told him that he had retired as a brewery truck driver.

■ All of the questions of the court directed to the prospective jurors in voir dire related to connections with Detroit Harbor Terminal. The juror never worked for Detroit Harbor Terminal and had no dealings or connection with it, so far as is shown by the record before us. One of the prospective jurors, a

Mr. Buick, responded that he had had a brief contact with Mr. Young whom he believed was vice president of Detroit Harbor Terminal. This is the only reference to Mr. Young in the voir dire. From this, counsel for the defendant argues that the juror should have volunteered that he too had known Mr. Young. We do not think that this logically follows and that the juror can be charged with withholding information. Juror Tickner was not a party to the colloquy between the court and Mr. Buick and he may not have been alert to the significance of it. Furthermore, he might well have not realized that the Young who is now president of Detroit Harbor Terminal was the Young for whom he worked at Better Brands fifteen years before. Indeed, he may have had no recognition of Mr. Young until he saw him on the witness stand. Under these circumstances we think the juror was not called upon to make a spontaneous response.

It is argued by counsel for the government that the defendants were made aware of this matter while the trial was in progress and that they did not make timely objection to it. This assumes that counsel became aware of it at the time Mr. Young testified. This is not necessarily true and we do not find anything in the record to show when counsel first learned of the acquaintance. If it is true that counsel learned of it when Mr. Young testified, then the government's point is well taken. Frazier v. United States, 335 U.S. 497, 512, 69 S.Ct. 201, 93 L.Ed. 187; Spivey v. United States, 109 F.2d 181, 186, C.A.5, cert. den. 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401.

■ Finally, it is claimed that the court erred in not granting a new trial to O'Brien for the reason that government counsel made prejudicial comment on his failure to testify. The basis of this claim is the statement of government counsel "And there is no contradiction of that at all in this record," taken out of context[3] from counsel's rebuttal argument.

---

3. "Now, ladies and gentlemen of the jury, is it believable to you that the defendant O'Brien, having told the agents earlier on March 21st it was, 'Look, I had this conversation with Young and he gave me authority or something, permission to remove this, and it was pursuant to that that I allowed these men to remove this merchandise,' this occurring in March 21st, 1963, and then, having talked not to Young but having gotten Drijver on the phone—no showing that he talked to Young on that day; is it believable to you that Mr. O'Brien is going to sit around for a year and a half, up to the very day of this trial, and in fact, up to the date of Mr. Young taking the stand and not go to Mr. Young and not ask Mr. Young?

" 'Look, Mr. Young, I am in trouble here, Didn't you tell me several months before this merchandise was released that you had given me permission to negotiate for the scrap removal?

"Is it believable to you that the defendant O'Brien is not going to talk to Mr. Young over this entire eight-months period, or whatever it is, getting on close to two years now, between the time of this occurrence and the time of this trial, and yet, Mr. Young testifies, 'No, O'Brien never has talked to me since about this subject.' And there is no contradiction of that at all in this record.

"Now, I suggest to you that there are only two inferences to be drawn from that. The first is that O'Brien didn't talk to Young because it was futile to do so. He knew that there had never been any such conversation and he wasn't going to raise the subject with Young, and get a no response, which isn't going to help him.

"So that O'Brien doesn't do it for that reason.

"And the second explanation is simply this, that possibly he did talk to Young in this 18 or 20 month period since the time of this occurrence and Mr. Young gets on the stand and says that he had not talked to O'Brien because he is trying to cover up for O'Brien; If there is to be any inference at all about the testimony of Mr. Young and Mr. Drijver, the inference is that they are very anxious to cover up for Mr. O'Brien, but they don't want to go to the extent of committing perjury to do so. They are willing to say possibly, that 'I don't recall this or that,' but they are not willing to come out and say, 'Yes, I authorized the removal; we had negotiations about the scrap removal and the like,' and that to me is the inference that this testimony lends itself to."

A motion for mistrial was made on behalf of the defendant O'Brien. Authorities[4] were cited which tend to hold that a statement to the effect that there is no contradiction in the record when only the defendant, who did not take the witness stand, could make the contradiction, amounts to prejudicial comment on the failure of the witness to testify.

Taken in the entire context of the argument of counsel, we do not think the statement constitutes comment on the failure of the defendant O'Brien to take the witness stand and to testify in his own behalf. We are of the opinion that the district judge gave an adequate and correct summary of the incident in his opinion denying the motion for new trial. He said:

"However, it would seem that in the instant case Mr. Komives' comment that Young's testimony was uncontradicted would constitute an improper comment on O'Brien's failure to take the stand only if the jury would be likely to conclude from the statement in the context of the argument that O'Brien's failure to contradict the testimony reflected adversely on O'Brien in some manner."

\* \* \* \* \* \*

"It is clear from an examination of the context of Mr. Komives' allegedly prejudicial comment that he was not attempting to suggest to the jury any improper inference concerning O'Brien's failure to take the stand. He continued his argument by stating there were only two inferences to be drawn from the uncontradicted statement of Young that O'Brien had never talked to him since—either that Young was telling the truth or that he was lying. Mr. Komives' argument to the jury was in substance that in either event it was damning to O'Brien. If Young were telling the truth, argued Mr. Komives, then O'Brien would know better than to talk to him later and try to fabricate an alibi. But if Young were lying, O'Brien must have talked to him in an attempt to establish an alibi, and therefore Young was covering up for O'Brien.

"Thus, Mr. Komives, it appears to this Court, was clearly not arguing that Young must have been telling the truth because O'Brien did not take the stand to contradict him. On the contrary, the argument called Mr. Young's credibility into question, in spite of the fact that his statement was uncontradicted. The remark that Young's statement was uncontradicted was part of an argument based on opposing interpretations of Mr. Young's credibility, and when the remark is seen in this context, it is highly unlikely that the jury drew from the remark any unfavorable inference concerning O'Brien's failure to take the stand. Indeed, the jury hardly had time even to reflect that O'Brien was the only person who could have contradicted Young's statement. Further, this Court does not consider that the statement of Mr. Komives was specifically planned as a comment on the silence of the defendant O'Brien."

\* \* \* \* \* \*

"In the opinion of this Court, the remark of Mr. Komives that Young's statement was uncontradicted was not specifically planned to prejudice O'Brien, nor did it cause the jury to look unfavorably upon O'Brien's failure to take the stand. Therefore, O'Brien, in the opinion of this Court, was not prejudiced by the remark and the remark was not improper.

"But even assuming hypothetically that the remark was prejudicial, defense counsel argued and the Court specifically instructed the jury that O'Brien had a constitutional right not to take the stand, and that no inference

4. Linden v. United States, 296 F. 104, C.A.3; Barnes v. United States, 8 F.2d 832, C.A.8; Langford v. United States, 178 F.2d 48, C.A.9, cert. den. 339 U.S. 938, 70 S.Ct. 669, 94 L.Ed. 1355; Leathers v. United States, 250 F.2d 159, C.A. 9.

should be drawn from his failure to do so.

"In the opinion of this Court, such instructions corrected any possible error. Therefore, a new trial is not 'required in the interest of justice' on this ground under Rule 33."

In support of his ruling the court cited 23A C.J.S. Criminal Law § 1098, p. 172; 8 Wigmore, Evidence, Sec. 2272, p. 436; People v. Earl, 299 Mich. 579, 300 N.W. 890. See Langford v. United States, 178 F.2d 48, at p. 55, C.A.9, cert. den. 339 U.S. 938, 70 S.Ct. 669, where the court said:

"We believe that the remarks of the prosecutor, when considered as the jury must have viewed and understood them in the light of what transpired at the time, were not prejudicial. We have come to this conclusion, not for the reason urged by the government, but for the reason that we do not think that the remarks of counsel were made in such manner as would be likely to lead the jury to draw improper inferences."

We are asked, on behalf of the defendant Parisi, to find as plain error under Rule 52(b) F.R.Cr.P. the giving of a charge which was given in the language requested by counsel representing the defendant at the trial. The charge reads as follows: "I charge you that the defendant Parisi must have taken part in this transaction with an unlawful intent—in other words, a consciousness of guilt—" The court added to that "and that would apply, of course, to both defendants." This part of the charge followed a statement to the effect that if the jury found that either defendant reasonably believed the property to be abandoned property, the jury should acquit such defendant.

It is claimed that the objectionable instruction virtually directed the jury to return a verdict against the defendant Parisi. While the charge was framed in a poor choice of language, it is obvious what counsel meant at the time it was submitted. It is really in the sub-junctive and not a statement of a fact. What it says, very poorly, is that Parisi must have had an unlawful intent before he could be found guilty. We think counsel, the Court and the jury understood it. We find no merit to this assignment of error.

The district judge concluded that the three counts of the indictment constituted but one offense and he gave each of the defendants only one sentence. We find no error in this respect.

The judgment of the District Court is affirmed as to both defendants.