**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Charles SMITH,
Defendant-Appellant.**

**No. 76–1939.**

United States Court of Appeals,
Fifth Circuit.

March 10, 1977.

Rehearing Denied April 12, 1977.

---

William C. Smith, pro se.

Howard T. Snyder, Jacksonville, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Charles O. Farrar, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, AINSWORTH, Circuit Judge, and JAMESON,* District Judge.

JAMESON, District Judge:

William Charles Smith has appealed his conviction, following a jury trial, of willfully failing, while released on bond, to appear for trial, in violation of 18 U.S.C. § 3150. He contends that the district court erred in (1) denying defendant's motion for a continuance; (2) failing to instruct the jury on (a) "duress" and (b) intoxication; (3) denying defendant's motion for acquittal; and (4) denying defendant's motion for a mistrial because of prosecutorial misconduct. We affirm.

### Factual Background

Smith, formerly a practicing attorney in Florida, was indicted on May 23, 1973, with several other persons, charged with the vio-

---
* Senior District Judge for the District of Montana, sitting by designation.

lation of 18 U.S.C. § 371 (conspiracy) and § 1341 (bank fraud) in connection with "Anglo-Canadian Group, Ltd.". He was tried, convicted, and sentenced to ten years imprisonment.[1] On June 4, 1973, Smith and others were indicted, charged with violation of the same statutes, in connection with the "Normandie Trust". This case was set for trial on May 14, 1974.[2] Smith failed to appear.

On August 22, 1975 Smith was indicted for failure to appear for trial on May 14, 1974. On January 18, 1976 he was seized by four Mexican immigration agents in Mexico City and two days later was turned over to an F.B.I. agent in Laredo, Texas. Following a jury trial on March 4, 1976, Smith was convicted. On April 1 he was sentenced to four years imprisonment, to run consecutively with the ten year sentence imposed in the "Anglo-Canadian" case, and was fined $5,000.

### Evidence at Trial

It is undisputed that Smith failed to appear for his trial on May 14, 1974. His attorney testified that he had several conversations with Smith prior to May 14—the last about two days before, when he told Smith to be in court at 9:30 A.M. on May 14. Smith testified that he could not remember anything about May 14, except that he "woke up" in Panama and did not know how he got there. Both Smith and his attorney testified that Smith had been drinking excessively for some time prior to May 14, that he had serious marital problems, and that he felt that he had been harassed and persecuted by the Government through a number of other indictments in various parts of the country, which later had been dismissed.

Smith admitted that he had been present throughout the trial of the "Anglo-Canadian" case, which lasted about a month, and a three-week trial in the "Transcontinental Bank of Sark" case.[3] Smith and his attorney testified that Smith had been drinking heavily during those trials and continued to do so in May of 1974, when he was drinking about a quart a day.

Smith's passport, which was received in evidence, showed that Smith entered Panama on May 14, 1974. It contained notations of entries into a number of other countries subsequent to that date. It did not show any re-entry into the United States prior to January 20, 1976 when Smith was turned over to the F.B.I. agent in Laredo, Texas. It seems clear accordingly that Smith was out of the United States, in various countries, continuously from May 14, 1974 to January 20, 1976.[4] He admitted on cross-examination that he had been out of the country for over a year, that he had not surrendered to serve any sentence in the "Anglo-Canadian" case, and that he knew he would not have to stand trial in the "Normandie Trust" case as long as he stayed out of the country.

### Motion for Continuance

Smith appeared before a magistrate on February 6, 1976, and the Public Defender was appointed to represent him. On February 10 the case was set for trial on February 23. Notice of the setting was received by Smith's counsel on February 10 or 11. Counsel first saw Smith on February 18.

At a calendar call on February 19 Smith's counsel orally moved the court for a continuance to "gain time to subpoena witnesses". This motion and a motion of the Government to inquire further into Smith's entitlement to court appointed counsel were set

---

1. Smith was released on bond pending disposition of his appeal. His appeal was later dismissed by this court. See *United States v. Moore,* 505 F.2d 620 (5 Cir. 1974).

2. The case was initially set for May 13, and written notice was mailed to both Smith and his counsel. At the call of the calendar on May 9, 1974, at which Smith's counsel was present, the case was set for May 14.

3. During the fourth week of the Bank of Sark trial, Smith's attorney was injured in an automobile accident and as a result Smith was severed from the case.

4. Smith testified that prior to his arrest he had contacted an attorney in Los Angeles, to discuss his surrender.

for February 26.[5] At a hearing on February 26 both motions were denied, and the case was set for trial on March 3.

On March 2 counsel for Smith filed a motion for a continuance, reciting that an insanity defense was contemplated, that counsel had contacted a psychiatrist to interview Smith over the weekend of February 28–29, and that counsel learned on March 1 that the psychiatrist had not gone to the jail for the examination and "therefore no announcement can be made to the court concerning the viability of this defense". The motion was renewed on March 4, the day of the trial.[6] The court denied the motion, stating that it was untimely under Rule 11 of the Southern District of Florida.[7]

It is well settled that, "A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of that discretion." *United States v. Uptain,* 531 F.2d 1281, 1285 (5 Cir. 1976). After noting "a particularly common claim" that a continuance is necessary "to interview and subpoena potential witnesses" and listing numerous claims in that category, the court in *Uptain* stated that a "general rule recently has emerged":

> "A movant must show that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable testimony would be tendered by

the witness, that the witness is available and willing to testify, and that the denial of the continuance would materially prejudice the defendant." [8] 531 F.2d at 1287.

While the trial court might properly have granted the motion for a continuance, we cannot find an abuse of discretion in the failure to do so. There is no evidence that Smith had ever consulted a psychiatrist or that any attempt was made to do so between February 6 and February 28, 1976. The defense of insanity had not been raised in either of the other trials and admittedly Smith had been drinking heavily at that time as well as when he left for Panama.[9] There is no evidence that a psychiatric examination would have been favorable to appellant.

*Instructions*

The parties agree that the Government was required to prove beyond a reasonable doubt the three elements of the offense charged: (1) that the defendant was released on bond pursuant to Chapter 207 of the United States Code; (2) that he was required to appear before a court or judicial officer; and (3) that he knowingly and willfully failed to appear. The jury was so instructed. With respect to the third element the charge read:

> "The crime charged in this case is a crime which requires proof of specific intent before the defendant can be convict-

---

5. The motion recited that Smith had testified before the magistrate on February 6 that his total cash assets were approximately $2,150, but that on January 20, a fixed deposit on the Bank of Montreal in the amount of $35,000 Canadian dollars was found in his possession.

6. Defense counsel orally informed the court, in support of the renewed motion, that he had attempted to have a second psychiatrist examine Smith "in the last day or two", but that the psychiatrist was unable to see him.

7. Local Rule 11 reads:
   "A continuance of any trial, pretrial conference, or other hearing will be granted only on exceptional circumstances. No such continuance will be granted on stipulation of counsel alone. However, upon written motion served and filed at the earliest practical date

prior to the trial, pretrial conference, or other hearing, and supported by affidavit setting forth a full showing of good cause, a continuance may be granted by the court."

8. Citing *United States v. Miller,* 513 F.2d 791, 793 (5 Cir. 1975) where the court had noted that "Local Court Rule 11 of the Southern District of Florida provides that the trial court may grant a continuance to obtain a witness only under 'exceptional circumstances'."

9. Nor does it appear that any effort was made to consult a psychiatrist as a possible basis for a motion for a new trial. It may be noted also that there is no contention that Smith was unable to assist in his defense. On the contrary, he testified at length at his trial and prepared the initial brief on his appeal.

ed. Specific intent as the term implies means more than the general intent to commit the act. To establish specific intent the Government must prove that the defendant knowingly did an act which the law forbids; that is to say purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

"An act or failure to act is knowingly done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

"An act is done willfully if done voluntarily and with intent to do something the law forbids; that is to say, with the purpose either to disobey or disregard the law. It is an attitude of mind and carries with it the thought of intentional ignoring of the law or of an indifference to its provisions.

"In order for the defendant to have committed the crime as charged in the indictment you must find that the defendant's actions were willful and intentional, as distinguished from inadvertent or by mistake.

"Willfulness can rarely be proved directly but it may be inferred from circumstantial evidence. The acts, omissions or words of a person may give evidence of that person's state of mind. Ordinarily it is reasonable to infer that a person intends the natural and probable consequences of conduct knowingly undertaken or knowingly omitted.

"It is for you to determine from all the facts and circumstances in evidence whether the defendant willfully failed to appear as required."

■ Appellant argues that the jury should have been instructed on the effect of "duress" and intoxication. No instruction on intoxication was offered or even suggested to the court. With reference to an instruction on duress, during the discussion of the court's charge with counsel, counsel for appellant suggested "some sort of instruction on duress, mental duress, as a legal excuse to the acts". The court ad-

vised counsel that the "instruction on specific intent" would permit him to make that argument and concluded that it would be misleading to the jury to charge them on duress, because there was "no evidence on duress".

Counsel for Smith did in fact argue strenuously to the jury a lack of willfulness by reason of Smith's state of mind resulting from his marital problems, "the treacherous treatment" of the Government in "forcing him to fly all over the county to face charges in places where he had never even been, and the intolerable drinking". Under all the circumstances there was no error in the court's refusal to instruct on duress or failure to instruct that intoxication may diminish the intent to commit the crime.

*Motion for Acquittal*

As this court noted in *United States v. Prout*, 526 F.2d 380, 385 (5 Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 114, 50 L.Ed.2d 109, "On a motion for judgment of acquittal, the test is whether, taking the view most favorable to the government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. . . . Whether the evidence is direct or circumstantial, the test is not whether the evidence excludes every reasonable hypothesis other than that of guilt, but whether reasonable minds could conclude that the evidence is inconsistent with the hypothesis of innocence." In reviewing the jury's findings, the court "must make all reasonable inferences and credibility choices as will support the jury's verdict of guilty." *United States v. Wayman*, 510 F.2d 1020, 1026 (5 Cir. 1975), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975).

■ In a § 3150 violation circumstantial evidence may be considered in determining willfulness. As the court noted in *United States v. Wetzel*, 514 F.2d 175, 177 (8 Cir. 1975), *cert. denied*, 423 U.S. 844, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975), "in common

experience circumstantial evidence is most likely to be the only evidence of a subjective state of mind." As in *Wetzel*, the defendant here took the stand himself. The jury could reasonably infer from his own testimony that he knowingly and willfully failed to appear for his trial in violation of § 3150. He admitted that he had been drinking heavily, although present daily during seven weeks of prior trials; that he had been found guilty and sentenced in the Anglo-Canadian case; that he stayed out of the United States for over a year and knew he would not be tried as long as he stayed out of the country. It was undisputed that he had been apprised of the trial date by his attorney two days before he was to appear for trial, and it appeared from his passport that he entered Panama on the trial date.

*Motion for Mistrial*

■ We find no merit in appellant's final contention that the court erred in denying appellant's motion for mistrial because of prosecutorial misconduct. Appellant complains that the prosecutor, on cross-examination, asked appellant whether he had started to serve any sentence on the Anglo-Canadian case and commented in closing argument that appellant knew he hadn't started serving his sentence. This was relevant to the issue of specific intent and did not amount to prosecutorial misconduct.

Affirmed.