UNITED STATES of America, Appellee,

v.

**Earl McLENNAN, Defendant, Appellant.**

**No. 81–1340.**

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1982.

Decided March 15, 1982.

---

Jeanne Baker, Cambridge, Mass., with whom Leslie J. Rosen, David L. Kelson, Todd Cronan, and Baker & Fine, Cambridge, Mass., were on brief, for defendant, appellant.

John H. La Chance, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, TIMBERS * and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Defendant Earl McLennan appeals from his conviction, under 18 U.S.C. § 3,[1] as an accessory after the fact to Jamiel Chagra's August 23, 1979 bail jump.[2] McLennan was tried by a jury in April 1981, found guilty, and sentenced to a one-year prison term. This appeal followed.

The parties stipulated in the district court that in 1979 Jamiel Chagra was released on bail by the United States District Court for the Western District of Texas; that Chagra was present at an August 15, 1979 hearing

---

* Of the Second Circuit, sitting by designation.

1. 18 U.S.C. § 3 provides,

 [w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

2. 18 U.S.C. § 3150 provides for criminal punishment of bail jumping for

 [w]hoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required
 . . . .

where he was ordered to appear at an August 23 hearing on a government motion to increase his bail; that when Chagra failed to report as required to a probation officer on August 21, his bail was revoked and a higher bail set; and that he "willfully" failed to attend the scheduled August 23 bail hearing. A warrant then issued for his arrest. McLennan further stipulated that Chagra was apprehended some six months later in Las Vegas, Nevada.

At McLennan's trial, the government introduced evidence tending to show that McLennan and Chagra were close friends and business associates. Witnesses reported seeing the two men together at each other's homes on a number of occasions in 1978. They were also seen together during 1978 and perhaps early 1979 at Caesar's Palace in Las Vegas. The senior vice president of Caesar's Palace reported that Chagra had guaranteed a $20,000 line of credit for McLennan at the casino and that, as of December 14, 1978, McLennan owed the casino some $17,500, a debt which has never been paid. He said that Chagra was also a heavy gambler and a good customer at Caesar's Palace.

Respecting McLennan's alleged role in Chagra's bail jump, the government showed that McLennan, who apparently lived in Florida, was in Wisconsin on September 13, 1979 (some three weeks after Chagra disappeared) and purchased, in his own name, an automobile. Three weeks later, on October 5, McLennan appeared in Worcester, Massachusetts, where he purchased a 1979 Winnebago using a phony Wisconsin driver's license and other identification papers bearing the name "Christopher P. Titchell." He paid the $23,000 purchase price in three cash payments of $5,000, $5,000 and $13,000. McLennan stipulated at trial that the Winnebago salesman was under the impression McLennan was buying the vehicle for a third party.

At about the same time that McLennan was purchasing the Winnebago, Leon Nichols, Chagra's brother-in-law, drove his sister (Chagra's wife) and her two children from their home in El Paso, Texas to Pittsburgh, Pennsylvania where, Nichols testified, they were to meet Jamiel Chagra. They arrived in Pittsburgh on October 5. Nichols returned to Texas the next day, leaving Chagra's wife and children behind at a motel.

Four days later, on October 9, one "Chris Titchell" checked into a campground in Iowa with one other adult and two children. He was driving a Winnebago with the same Massachusetts registration as the one purchased by McLennan on October 5. On December 24, 1979, a "Phillip Titchell" registered at a Holiday Inn in Kansas City. On December 26, a Kansas City real estate agent took a "Chris and Martha Titchell" to see a house for rent in a suburb of Kansas City. Two days later, this agent visited the "Titchells" at a motel where they executed a lease for the house. While at the motel, the agent saw a large Winnebago and later identified the man calling himself "Chris Titchell" as, in fact, Jamiel Chagra. Chagra was finally apprehended on February 21, 1980, near a Las Vegas motel where he had registered using the Titchell alias. Leon Nichols was also registered at the same motel.

At the time of his arrest, Chagra's wallet contained a phony Wisconsin driver's license bearing the name "Christopher P. Titchell" and displaying the same identification number as the phony license used by McLennan when he purchased the Winnebago in October. The wallet also contained a paper with McLennan's wife's residential telephone number in Florida written on it and a number of other false identification papers, some of which linked Chagra to McLennan.

Some months later, in May 1980, the FBI located the Winnebago on a farm in El Paso, Texas. Inside, they were able to develop both McLennan's and Chagra's fingerprints. In one instance, the two men's prints were on facing pages of the owner's manual.

McLennan now contends that the district court erred in denying his pretrial motion to dismiss the indictment and that the evidence was insufficient to establish an essential element of the offense. He also argues

that the district court's instruction to the jury on reasonable doubt was erroneous and that a remark made by the district court in its opening communications with the jury panel was improper. We deal with each of these issues.

McLennan timely moved to dismiss the indictment prior to trial arguing that it was fatally defective because it did not specifically allege that Chagra's bail jump, to which McLennan was allegedly an accessory, was willful.[3] See 18 U.S.C. § 3150; note 2. In challenging the court's denial of his motion, McLennan does not argue that he was mis..ed or otherwise prejudiced in his defense by this deficiency. Rather, he argues that his right under the fifth amendment not to be held to answer for a crime unless on indictment of a grand jury was violated because his indictment as an accessory after the fact failed to include all the elements of the offense (encompassing, as he asserts, see infra, both the accessory crime and the offense which underlies it).

 The general rule is that an indictment is sufficient under the Constitution so long as it fairly pleads all of the essential elements of an offense and "apprises a defendant of the crime with which he is charged so as to enable him to prepare his defense and to plead judgment of acquittal or conviction as a plea to a subsequent prosecution for the same offense." Portnoy v. United States, 316 F.2d 486, 488 (1st Cir.), cert. denied, 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50 (1963). See also Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Indictments, however, need not always plead required scienter elements in precise statutory terms such as "willfully" or "knowingly" so long as other words or facts contained in the indictment "necessarily or fairly import guilty knowledge." Madsen v. United States, 165 F.2d 507, 509–10 (10th Cir. 1947). See also Hughes v. United States, 338 F.2d 651, 652 (1st Cir. 1964) (scienter element is sufficiently pleaded if "other allegations in the indictment compel an inference of intent"); Griffith v. United States, 230 F.2d 607 (6th Cir. 1956) (word "knowingly" not required when other words "plainly and definitely indicate . . . the essential ingredient of scienter").

In Portnoy, the defendant was convicted of assaulting a United States marshal. Before trial he moved to dismiss his indictment because it failed to state that, at the time of the assault, he knew his victim was a federal officer. The indictment did state, however, that the defendant committed the assault "on account of [the officer's] official duties." Examining this language, this court found that the words "on account of" necessarily implied that the defendant had the requisite knowledge of the victim's official status at the time of the attack and upheld the indictment. By contrast, in Hughes v. United States, we held that the word "unlawfully" was alone insufficient to import the specific felonious intent which constituted a necessary element of the statutory crime. The present case comes somewhere between these two examples, but we think it closer to Portnoy.

---

**3.** The indictment reads as follows:

A. On or about August 15, 1979, Jamiel Chagra was convicted in the United States District Court for the Western District of Texas of an offense charging that he conducted a continuing criminal enterprise in violation of Title 21, United States Code, Section 848.

B. On or about August 23, 1979, at El Paso, Texas, Jamiel Chagra failed to appear before the United States District Court after having been ordered to do so, in violation of Title 18, United States Code, Section 3150. At that time, the United States District Court for the Western District defaulted Jamiel Chagra.

C. From on or about August 27, 1979 up to and including May 5, 1980 at Worcester, in the District of Massachusetts, and elsewhere EARL A. MC LENNAN knowing that Jamiel Chagra had failed to appear when so ordered by the Court, in violation of Title 18, United States Code, Section 3150, did knowingly and willfully relieve, receive, comfort, and assist the said Jamiel Chagra in order to hinder and prevent his apprehension and punishment; in violation of Title 18, United States Code, Section 3. Paragraph "A," above, was not presented to the jury by agreement of the parties with the approval of the district court.

We observe initially that an indictment charging one as an accessory after the fact must plead the underlying offense, meaning here the bail jumping offense, as well as the accessory offense. *See United States v. Balano*, 618 F.2d 624, 633 (10th Cir. 1979), *cert. denied*, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980) (accessory crime "presupposes the completion of an underlying crime"); 42 C.J.S. § 149. In the present case "willfully" is undoubtedly a necessary element of bail jumping under section 3150: were one to fail to appear negligently or for good cause, the statutory crime would not be committed. The question is thus whether, in the absence of an express allegation in the present indictment that Chagra's bail jump was "willful," the allegation is nonetheless so implicit in the language constituting the indictment as to render the omission immaterial. We think it is.

The indictment states that Jamiel Chagra was convicted of a federal crime "on or about August 15, 1979"; that about a week later he "failed to appear" before the district court "after having been ordered to do so"; that this failure constituted a "violation of 18 U.S.C. § 3150"; and that Chagra was "defaulted" by the court for this act. In addition, the indictment asserts that Earl McLennan knowingly and willfully aided Chagra during a period of some eight months "in order to hinder and prevent [Chagra's] apprehension and punishment." The obvious import of this last assertion is that Chagra was fleeing the authorities during this period with the "willful" assistance of McLennan.[4]

Defendant strenuously argues that none of these allegations, taken separately, adequately supplies Chagra's missing "willfulness." All of them together, however, strongly imply that Chagra's failure to appear was intentional. Indeed, the combination of Chagra's failure to appear after being specifically ordered to do so a week after he was convicted of a crime, the district court's entry of a default against Chagra, and the fact that he was in flight from the authorities for a period of months while McLennan helped him to avoid capture compels the inference that his failure to appear was willful.[5] Were his absence from the court hearing inadvertent or involuntary, the allegation that he was in flight for a period of months after being "defaulted" would not make sense.

As further indicia that willfulness was charged, the government points out that Chagra's failure to appear was specifically alleged to be in violation of Title 18, section 3150. It argues that by itself this statutory reference reveals the nature of the underlying offense, including the element of willfulness. This argument, however, runs contrary to the canon that statutory citations cannot normally supply the missing element in an indictment. *United States v. Wabaunsee*, 528 F.2d 1 (7th Cir. 1975); *United States v. Berlin*, 472 F.2d 1002 (2d Cir.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973). In indictments for being a principal, that rule is too far settled to be questioned, and even in an accessory indictment such as this, we think the missing element has to appear primarily from language in the indictment, not solely from language in a statute cited in the indictment. Nonetheless, when considering whether an indictment for being an accesso-

---

**4.** Defendant argues that such an inference is unwarranted because this portion of the indictment refers to McLennan's rather than Chagra's crime. We think we are entitled to view the indictment "as a whole," however, and to give the words their "plain and sensible meaning." *United States v. Haas*, 583 F.2d 216, 220 (5th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979). So read, the indictment supports the inference we draw.

**5.** As a matter of law, these facts, if uncontradicted at trial, would certainly establish the required willfulness element. *See United States v. Smith*, 548 F.2d 545, 549–50 (5th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977) (circumstantial evidence in bail jumping case likely to be the only way to prove defendant's subjective state of mind); *United States v. Washam*, 529 F.2d 402 (5th Cir. 1976) (evidence that a defendant, who was out on bail, had notice of an appearance date, failed to appear, and was at large for a number of months before being apprehended sufficient to show bail jumping was willful).

ry sufficiently describes the underlying offense, common sense suggests that such a citation should not be entirely ignored where, as here, it so plainly reinforces what is implicit in the text. *Cf. United States v. Mixon,* 374 F.2d 20 (6th Cir. 1967); *Davis v. United States,* 253 F.2d 24 (6th Cir. 1958) (conspiracy indictments). Here the allegation that Chagra's failure to appear violated Title 18, section 3150 (which expressly states that the conduct must be willful) would make it crystal clear, if any lingering doubt were to exist, that Chagra's alleged bail jump was willful. *Cf. United States v. Duncan,* 598 F.2d 839 (4th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979) (indictment under 18 U.S.C. § 2511 sufficiently stated element of a justifiable expectation of privacy when the term "oral communications" was pleaded as well as the relevant statutory section which defined such communications in privacy terms); *United States v. Johnson,* 414 F.2d 22 (4th Cir. 1969), *cert. denied,* 397 U.S. 1071, 90 S.Ct. 1495, 25 L.Ed.2d 696 (1970) (statutory citation plus other facts sufficient to supply "willfulness" element in perjury case).

Thus, the facts pleaded in the indictment which necessarily support the inference that Chagra's failure to appear was a willful act, taken together with the correct statutory reference to section 3150, sufficiently assures us that the grand jury charged

McLennan with an actual crime for which he may not again be put in jeopardy. This is not a case where the lack of an essential element prejudiced the defendant[6] or hindered him from preparing a defense. Nor is it a case, like *Hughes,* where the government relies upon a single vague word such as "unlawfully" to supply the missing scienter element. We therefore find that, taken as a whole, the indictment adequately stated the elements of both the underlying and the accessory crimes,[7] and we accordingly affirm the district court's ruling upholding the indictment.

■ With respect to McLennan's challenge to the sufficiency of the evidence upon which he was convicted, we find the claim to be wholly without merit. Viewing the evidence, including all legitimate inferences, "in the light most favorable to the government," *United States v. Indorato,* 628 F.2d 711, 713 (1st Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), we have no difficulty concluding that there were sufficient facts from which a reasonable jury could infer that McLennan had acted as an accessory after the fact to Chagra's bail jump. A jury could conclude, based on McLennan's relationship with Chagra and on testimony by other Chagra intimates, that McLennan learned of Chagra's bail jump and decided to help him prior to October 5 when McLennan was

---

**6.** We are aware, of course, that McLennan need not show "actual prejudice" to prevail on this appeal since he objected to the indictment in a timely manner. *United States v. Previte,* 648 F.2d 73, 80 (1st Cir. 1981).

**7.** We think the indictment also adequately stated the required scienter on the part of McLennan. McLennan, according to the indictment, knew that Chagra had failed to appear when ordered to do so in violation of section 3150. He also "knowingly and willfully" helped Chagra over a period of months to avoid capture. These facts adequately suggest that McLennan knew Chagra had committed an intentional crime when he failed to appear. Moreover, we find to be without merit McLennan's further charge that the indictment failed to adequately identify the particular conduct McLennan was supposed to have engaged in. The indictment in question followed the statutory language of section 3 describing the crime. At least when

an accessory crime is at issue, we think that such language is normally sufficient to put the defendant on notice of the crime with which he is charged where, as here, the indictment also names the parties, general dates involved and the relevant states where key events occurred. *See United States v. Groff,* 643 F.2d 396 (6th Cir.), *cert. denied sub nom. Turbyfill v. United States,* —— U.S. ——, 102 S.Ct. 121, 70 L.Ed.2d 103 (1981); *United States v. Welliver,* 601 F.2d 203 (5th Cir. 1979). Moreover, defendant does not dispute that he received both a Bill of Particulars and copious discovery sufficient to put him on notice well before trial of the actual facts the government would seek to prove. *See United States v. Previti,* 644 F.2d 318 (4th Cir. 1981). We thus have no doubt that McLennan was able adequately to prepare his defense on the basis of the facts charged in the indictment together with other materials which were subsequently supplied to him by the government.

in Massachusetts purchasing the Winnebago. It could reasonably have found that McLennan bought and delivered to Chagra both the Winnebago and the phony Wisconsin driver's license and other papers bearing the name "Christopher P. Titchell" in order to help Chagra avoid arrest. The timing of the purchase, the suspicious circumstances surrounding the sale, Chagra's subsequent use of both the camper and McLennan's fake I.D., and the finding of both McLennan's and Chagra's fingerprints inside the vehicle, all support an inference that McLennan knew Chagra had committed an offense and took steps to help him evade capture. We thus reject McLennan's claim that there was insufficient evidence to convict him of the crime charged.

■ McLennan also challenges the district court's instruction on reasonable doubt. Viewing the charge as a whole, *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), we think the charge passes muster. Defendant particularly objects to the district court's use of the phrase "reasonably certain" in his instructions [8] and claims that this phrase "lowered the burden of proof . . . below the constitutional minimum."

We agree that the words "reasonably certain" or "reasonable certainty" as used here were not apt explanations of the concept of reasonable doubt. Depending on how he understood the word "reasonably," it is at least arguable that a juror who retained a reasonable doubt about the proof presented of a defendant's guilt could nonetheless feel "reasonably certain" that the defendant was guilty. In *United States v. Indorato*, 628 F.2d 711 (1st Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980), we found the interchange of the phrases "morally certain" and "reasonably certain" in the instruction in that case to be of "dubious value," *id.*, at 720, though we did not condemn the latter phrase with the same specificity as the former. We need not, however, pass on whether the words "reasonable certainty" or "reasonably certain" in an instruction containing little beyond these phrases, would amount to such an erosion of the reasonable doubt standard as to constitute reversible error. Such error as was here involved was adequately cured in a supplemental instruction on reasonable doubt given to the jury just before it retired.[9] We therefore affirm the district

8. The original instruction was given as follows:
 And beyond a reasonable doubt is a fairly simple term that I think you already have in your own mind. It is simply that you must be reasonably certain as to each of those essential elements, and that each of them has been proved. It isn't that you are mathematically or absolutely certain; it is simply but clearly that you are reasonably certain. If you are not reasonably certain as to any of the essential elements, then no hesitation, not guilty. If you are reasonably certain and it all adds up to you, then, of course, you will return a verdict in accordance with your oath.

9. The district court supplemented its instruction, at defendant's request, to include the following charge prior to the jury's retiring to consider its verdict:
 In my statement to you about the meaning of reasonable doubt I allowed that a simple statement of the meaning of reasonable doubt would be sufficient. But let me add to that. That beyond a reasonable doubt means that you must be persuaded to a degree of certainty that leaves in your mind a clear and settled conviction of guilt. A doubt is not reasonable if it is merely capricious, arbi-

trary, or without rational basis. If your view of the evidence or lack of evidence makes you doubt the Defendant's guilt because you have not been convinced that the government has shown the guilt of the defendant beyond a reasonable doubt, then it is your duty to acquit the Defendant.
 In affirming the district court, we reject defendant's contentions that the judge erred when he declined an additional "hesitate to act" instruction in addition to the above. The difficult subject of reasonable doubt does not always become clearer just because more words are offered to explain it. Finally, McLennan argues that the judge committed an additional error in stating, in his supplemental charge, that "you [the jury] must be [satisfied that] . . . the evidence *fairly conclusively* proves . . . [intent]." (Emphasis added.) The judge himself, when this phrase was brought to his attention, recalled that he had said "fairly *and* conclusively" in his instruction. The awkwardness of the phrase "fairly conclusively" added to the judge's recollection that he had used the word "and" (it is entirely possible that the judge paused between the words) leads us to conclude that this was, at worst, but "an obvious misstatement or . . . careless use of

court on this issue. *United States v. De-Vincent*, 632 F.2d 147, 152 (1st Cir.), *cert. denied*, 449 U.S. 986, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980).

■ Defendant's last claim is that the district court committed error in mentioning to the jury panel during its opening comments that Chagra was alleged to have been convicted of "a" federal offense. The court was doing nothing more at the time than reading the indictment which charged McLennan and trying to explain to the panel what the case was about. After defendant's attorney objected to the mention of Chagra's conviction, the district judge himself admitted that he might have made a "mistake" but noted that the principal prejudice which could result from inquiry into Chagra's crimes would arise from revealing to the jury the *nature* of Chagra's offense, not the mere fact that he had been convicted. Nevertheless, the court ultimately instructed counsel, after the jury was impanelled, not to refer in any way to Chagra's prior conviction.[10] It also struck, with assent from both parties, paragraph A of the indictment which made reference to the conviction.

We do not think this incident calls for reversal. *Cf. United States v. Fortes*, 619 F.2d 108 (1st Cir. 1980) (harmless error to admit evidence of prior crime). The court took pains to avoid recurrence of the reference, which did not apply to the defendant. The conviction mentioned was several evidentiary levels removed from McLennan himself—it being only a possible explanation for the bail jump—the jump itself being the crime McLennan aided as an accessory.

*Affirmed.*

---

words." *United States v. Harrigan*, 586 F.2d 860, 863 (1st Cir. 1978). We therefore find no reversible error.

10. A single juror, Number 51, expressed concern during voir dire over the fact that he did not know what Chagra had been convicted of. This juror was excused for cause.