**UNITED STATES of America, Plaintiff,**

v.

**Jorge DE CASTRO–FONT [1], Defendant.**

**Criminal No. 08–337 (FAB).**

United States District Court, D. Puerto Rico.

Dec. 22, 2008.

Opinion Denying Reconsideration Dec. 30, 2008.

Daniel A. Schwager, Public Integrity, United States Department of Justice, Washington, DC, Ernesto G. Lopez–Soltero, Timothy R. Henwood, United States Attorneys Office, District of Puerto Rico, San Juan, PR, Jacqueline D. Novas–Debien, U.S. Attorney's Office, District of Puerto Rico, Hato Rey, PR, for Plaintiff.

Lydia Lizarribar–Buxo, Lizarribar Masini Law Office, Joseph A. Boucher–Martinez, San Juan, PR, for Defendant.

## MEMORANDUM AND ORDER

FRANCISCO A. BESOSA, District Judge.

On December 3, 2008, defendant Jorge De Castro–Font ("De Castro") moved to dismiss counts 1 through 20, asserting that the counts omitted an essential element of the charged offense. (Docket No. 119) The government opposed De Castro's motion on December 12, 2008. (Docket No. 133) For the reasons provided below, the Court **DENIES** De Castro's motion to dismiss the first twenty counts of the indictment.

### Discussion

The Federal Rules of Criminal Procedure require an indictment to "contain 'a plain concise and definite written statement of the essential facts constituting the offense charged.'" *United States v. Barbato,* 471 F.2d 918, 921 (1st Cir.1973) (quoting FED.R.CRIM.P. 7(c)(1)). The Constitution requires that the indictment plead all of "the essential elements of an offense and 'appraise[ ] a defendant of the crime with which he is charged so as to enable him to prepare his defense and to plead judgment of acquittal or conviction as a plea to a subsequent prosecution for the same offense.'" *United States v. McLennan,* 672 F.2d 239, 242 (1st Cir.1982) (quoting *Portnoy v. United States,* 316 F.2d 486, 488 (1st Cir.), *cert. denied,* 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50 (1963)); *accord Hamling v. United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). These constitutional protections

are grounded in the Fifth and Sixth Amendments to the Constitution. *Russell v. United States,* 369 U.S. 749, 760–61, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Specifically, they are found in the Sixth Amendment's guaranty that the accused be informed of the nature and cause of the accusation, and the Fifth Amendment's Due Process Clause and the Fifth Amendment's provision requiring that a grand jury indict any person held to answer for a capital or otherwise infamous crime. *Id.* When evaluating the sufficiency of an indictment, the federal rules direct that a court shall not dismiss an indictment unless a defendant was misled and thereby prejudiced; they also direct that errors or irregularities in an indictment must be disregarded unless they affect the defendant's substantial rights. FED.R.CRIM.P. 7(c)(3) & 52(a); *accord Russell,* 369 U.S. at 762, 82 S.Ct. 1038.

■ De Castro argues that his right to be indicted by a grand jury was violated because counts 1 through 20 of his indictment failed to utilize the words "knowingly" or "willfully" when describing the honest services wire fraud counts. Knowingly [1] and willfully [2] describe the requisite mental state that the jury must attribute to De Castro for it to find him guilty of honest services wire fraud. *United States v. Sawyer,* 85 F.3d 713, 723 (1st Cir.1996) (holding that the government must prove "(1) the defendant's knowing and willing participation in a scheme or artifice to

defraud with the specific intent to defraud, and (2) the use of the mails or interstate wire communications in furtherance of the scheme"). The government does not dispute that the indictment omits those exact words, but it asserts that the language used in the indictment required the grand jury to consider whether De Castro acted with the requisite criminal intent, and therefore the counts in question should not be dismissed.

■ As a general matter, an indictment is sufficient as long as it sets forth "the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Hamling,* 418 U.S. at 117, 94 S.Ct. 2887 (quoting *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)). The indictment in this case has faithfully followed the language of the statute. The second paragraph in counts 1 through 20 contains the following language: "[1] Jorge A. De Castro Font … devised and intended to devise a scheme and artifice to defraud and deprive the Commonwealth of Puerto Rico and its citizens of their intangible right to the honest services of defendant De Castro Font as a Legislator of the Commonwealth[.]" (Docket No. 3, p. 9) The relevant part of the statutory provisions, read together, attach liability to "[w]hoever, having devised

---

1. Knowingly means that the act was done voluntarily and intentionally and not because of mistake or accident. *United States v. Tracy,* 36 F.3d 187, 194–95 (1st Cir.1994). It has also been held to mean that the defendant knew what he or she was doing and was aware of the nature of his or her conduct, and that the defendant did not act through ignorance mistake or accident. *Id.*

2. Willfully means that a defendant acted knowingly, deliberately, and intentionally as contrasted with accidentally, carelessly or un-

intentionally. 1A Kevin F. O'Malley, et al., *Federal Jury Practice & Instructions* § 17.05 (6th ed.2008); *see also United States v. Smith,* 278 F.3d 33, 37–38 (1st Cir.2002) (upholding a trial court's instruction that "willfully means a voluntary, intentional violation of a known legal duty. In other words, [the defendant] must have acted voluntarily and intentionally and with the specific intent to do something that the law forbids; that is to say, with a purpose either to disobey or disregard the law.").

or intending to devise any scheme or artifice to defraud [including] a scheme or artifice to deprive another of the intangible right of honest services ... transmits or causes to be transmitted by means of wire radio or television communication ... for the purpose of executing such scheme or artifice[.]" 18 U.S.C. §§ 1343, 1346. As the government notes, the statute does not utilize the words knowingly or willfully, rather it utilizes "having devised or intending to devise a scheme to defraud," to connote the necessary mental state. The Court finds nothing uncertain or ambiguous about this language. One cannot unknowingly or accidentally devise a scheme to defraud. To "devise" one must think, must plan, and these concepts involve voluntarily entering into a course of action. The Court does not believe it is at all likely that in reading the language borrowed from the statute that the grand jury understood that honest services wire fraud involved a mental state less than that of knowingly or willfully.

The indictment's reliance on the language of the statute and the clarity of that language is not the only reason that the indictment passes constitutional muster. The First Circuit Court of Appeals has held that indictments "need not always plead required scienter elements in precise statutory terms such as 'wilfully' or 'knowingly' as long as other words or facts contained in the indictment 'necessarily or fairly import guilty knowledge.'" *McLennan*, 672 F.2d at 242 (quoting *Madsen v. United States*, 165 F.2d 507, 509–10 (10th Cir.1947)); *see also Portnoy*, 316 F.2d at 488; *Griffith v. United States*, 230 F.2d 607 (6th Cir.1956); *cf., United States v. Cincotta*, 689 F.2d 238, 242 (1st Cir.1982) ("Indictments must be read to include facts which are necessarily implied by the specific allegations made.") (citations omitted); *Barbato*, 471 F.2d at 921 (same). As discussed in the preceding paragraph, the Court finds that the language borrowed from the statute connotes that De Castro must have acted knowingly and willfully.

This is not the only language in the indictment, however, that necessarily implies that De Castro acted intentionally and deliberately. Paragraph 53 of the indictment alleges that in each of the acts underlying the 20 counts of honest services wire fraud De Castro "transmitted and caused to be transmitted ... certain writings and signals" "for the purpose of executing and attempting to execute the above described scheme and artifice to defraud and deprive the Commonwealth of Puerto Rico and its citizens of their intangible right to the honest and faithful services of defendant De Castro." (Docket No. 3, p. 30) Again, as with the language utilized earlier in the indictment, acting with the "purpose" of executing the scheme and artifice to defraud necessarily implies that defendant De Castro acted intentionally and with an awareness that his actions involved fraud. Fraud, a purposeful misrepresentation made to obtain something to which the actor is not otherwise entitled, is the epitome of an intentional act done with an awareness of the wrongfulness of the act.

Although the general language relating to the honest services wire fraud scheme is sufficient to sustain the indictment, the indictment also includes specific allegations raising the inference that De Castro's actions were knowing and willful. The twenty counts of honest services wire fraud relate to twelve unnamed individuals identified by number. The indictment alleges that De Castro took specific actions in regards to each of the twelve. De Castro's alleged actions involving all twelve individuals raise the inference that he acted knowingly and willfully. For example, in May 2008, De Castro allegedly "stated in substance" that he required $10,000 to meet with person 3 and mem-

bers of Association B to discuss a list of legislative projects of interest to Association B. (Docket No. 3, p. 16) Person 3 then allegedly paid De Castro approximately $10,000 in exchange for the meeting and official acts discussed at the meeting. (*Id.*) In June 2008, De Castro allegedly met with person 3 and members of a different association, Association A. (*Id.*) At that meeting De Castro allegedly asked person 3 if the payment he would receive the following day was for matters involving Association A or Association B. (*Id.* at pp. 16–17) The following day, when payment was allegedly made, De Castro allegedly told his assistant, who picked up the payment, to deliver it to him in the bathroom because there were people in his office. (*Id.* at 17) All of these actions raise the inference that De Castro acted knowingly and willfully.

To begin with, the indictment reads that De Castro allegedly stated that he required payment in exchange for meeting with different associations and promoting their agenda. This is simply not an act that can be done involuntarily or by accident; any request for payment in exchange for services rendered, like any market-related transaction, is done intentionally and with an objective of obtaining something. One cannot imagine any service provider credibly saying that he accidentally asked for payment in exchange for accidentally meeting with a prospective client, and accepted payment from that client, also accidentally. De Castro's question as to which association was providing the payment to be made in June only reinforces the inference that he acted with specific intent; it raises the inference that he wanted to credit the payment to the correct party. Lastly, directing his assistant to provide him with the payment in the bathroom because people are in his office raises the strong inference that De Castro was aware of the wrongfulness of receiving a cash payment of this type.

As with the specific actions described within the first twenty counts, the grand jury also was entitled to draw inferences from counts 21 through 31 that the actions incurring criminal liability in counts 1 through 20 were done knowingly and willfully. *See McLennan*, 672 F.2d at 243 n. 4 ("We think we are entitled to view the indictment as a whole, however, and to give the words their plain and sensible meaning.") (citations and quotations omitted). Counts 21 through 31 include charges of conspiracy to commit extortion (18 U.S.C. § 1951(a)), bribery with respect to programs receiving federal funds (18 U.S.C. § 666(a)(1)(B)), and conspiracy to commit money laundering (18 U.S.C. § 1956(h)). These counts, which rely upon the specific actions also underlying the honest services wire fraud counts, allege respectively that De Castro acted knowingly (counts 21, 30 and 31), willfully (count 21), and corruptly (counts 22–29). Because the crimes charged in counts 21 through 31 arise from the same acts giving rise to counts 1 through 20, the grand jury must have considered whether those acts were committed with the requisite criminal intent. Thus, the language implicating criminal intent utilized in the counts following those challenged by De Castro provide an additional and independent basis for denying his motion.

In sum, considering the indictment as a whole, the Court finds that the element of scienter was sufficiently plead in the indictment. Accordingly, the grand jury was made aware of this element when it decided to issue the indictment. The Court also finds that De Castro has sufficient notice of the crimes with which he is charged in counts 1 through 20, enabling him to prepare his defense.

## Conclusion

For the reasons stated above, the Court **DENIES** De Castro's motion to dismiss

counts 1 through 20 for failure to utilize the words knowingly or willfully in describing the honest services wire fraud violations.

**IT IS SO ORDERED.**

### MEMORANDUM AND ORDER

Jorge De Castro–Font ("De Castro") filed a motion for reconsideration of the order denying his motion to dismiss counts 1 through 20 on December 28, 2008. (Docket No. 140) For the reasons provided below, the Court **DENIES** the motion for reconsideration.

### Discussion

The only novel parts of De Castro's motion for reconsideration relate to a case decided by the Ninth Circuit Court of Appeals, *United States v. Du Bo*, 186 F.3d 1177 (9th Cir.1999), and a case decided by the First Circuit Court of Appeals that references *Du Bo* but does not rely upon it, *United States v. Mojica–Baez*, 229 F.3d 292 (1st Cir.2000). De Castro's analysis of the applicability of these cases to the issue of whether the first twenty counts of the indictment are invalid because they omitted the words "wilfully and knowingly" to describe the honest services wire fraud charges is old wine poured into new bottles. De Castro continues to insist that the indictment must be sprinkled with the words "wilfully" and "knowingly" for it to fly. The words are not as magical, however, as Tinker Bell's pixie dust.

As this Court has already explained, De Castro's argument runs contrary to First Circuit precedent. *See United States v. McLennan*, 672 F.2d 239, 242 (1st Cir. 1982) (quoting *Madsen v. United States*, 165 F.2d 507, 509–10 (10th Cir.1947)) (indictments "need not always plead required scienter elements in precise statutory terms such as 'wilfully' or 'knowingly' as long as other words or facts contained in the indictment 'necessarily or fairly import guilty knowledge.' "). *Du Bo* and *Mojica–Baez* do not purport to overrule the earlier case law in the First Circuit nor do they require the Court to vacate its earlier order.

*Du Bo* involved a defendant charged with violating 18 U.S.C. § 1851 ("the Hobbs Act"). Rather than using language such as knowingly or willingly to describe the element of criminal intent in the Hobbs Act violation, the indictment simply charged the defendant with " 'unlawfully' affecting commerce by the 'wrongful' use of force." *Du Bo*, 186 F.3d at 1179. Prior circuit precedent had already established that these terms (unlawfully and wrongful) did not connote the proper *mens rea* for a Hobbs Act violation. *Id.* Thus, *Du Bo* does not stand for the proposition that an indictment must use the words knowingly or willingly to describe criminal intent; it merely stands for the proposition that the Hobbs Act indictment as constructed in that case, utilizing the words unlawfully and wrongful, did not contain the element of criminal intent.

*Mojica–Baez* does not make *Du Bo* binding on the First Circuit because it did not adopt or rely on the Ninth Circuit Court of Appeals' rationale in *Du Bo*. In *Mojica–Baez* the defendants challenged their indictment because it charged them with a violation of 18 U.S.C. § 924(c)(1), for using a firearm during a robbery, but it did not specifically charge them with violating 18 U.S.C. § 924(c)(1)(B) or specify that the firearm was a semiautomatic assault weapon (a fact that increases the minimum term of imprisonment). *Mojica–Baez*, 229 F.3d at 307. According to the defendants in *Mojica–Baez*, this presumed deficiency in the indictment required *per se* reversal. *Id.* at 308. One of the defendants actually relied upon *Du Bo* for the proposition that the omission of an element from an indictment is never harmless error. *Id.* The First Circuit Court of Ap-

378

peals disagreed, however, holding that the failure to include an element in an indictment that otherwise provided the defendants with fair notice of the charges against them implicates only harmless error review. *Id.* at 311.

The only other time that *Du Bo* appeared in the *Mojica–Baez* opinion was as a source for the venerable and off-quoted language that "at common law, the most valuable function of the grand jury was ... to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony ..." *Id.* at 309 n. 11 (quoting *Du Bo,* 186 F.3d at 1179 (quoting *Hale v. Henkel,* 201 U.S. 43, 59, 26 S.Ct. 370, 50 L.Ed. 652 (1906))). This reference underlies the importance of the grand jury but it does not require that an indictment exclusively utilize the words wilfully and knowingly rather than other words or facts that fairly or necessarily import guilty knowledge. Indeed, nowhere in the *Mojica–Baez* opinion does the First Circuit Court of Appeals suggest that precise terminology for *mens rea* found in statutes or jurisprudence must be utilized in lieu of other words or facts that implicate that the accused acted with the necessary criminal intent. Accordingly, the Court rejects De Castro's renewed attack on counts 1 through 20.

### Conclusion

For the reasons stated above, the Court **DENIES** De Castro's motion for reconsideration.

**IT IS SO ORDERED.**